IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INFINITE DATA LLC, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 12-1618-RGA |
| EBAY INC., | : |
| Defendant. | : |

**MEMORANDUM**

I have assigned to me twenty-one cases in which Infinite Data has sued for patent infringement. I also have one case in which Mellanox Technologies has sued Infinite Data for a declaratory judgment that its technology does not infringe Infinite Data's patent, and that the patent is invalid. Infinite Data has answered the declaratory judgment amended complaint, and alleged as a counterclaim that Mellanox's technology does infringe its patent. Thus, the usual issues of infringement and invalidity are present in the Mellanox case. Mellanox alleges that it has received indemnification requests from "many" of the twenty-one defendants, and that many of them are users and/or customers of Mellanox's technology.

All twenty-one defendants have filed motions to stay, arguing that they do use Mellanox's technology,[1] and that the Court should exercise its discretion to stay their cases while the Mellanox case proceeds. Besides for briefing, I have had oral argument, on October 11, 2013. At the argument, I asked the defendants to state their positions on being bound by any of

---

[1] Defendant Home Depot does not concede that it uses Mellanox technology. (No. 13-260, D.I. 20 at 1). Thus, there is no particular reason to grant a stay in relation to Home Depot.

the Mellanox proceedings. The defendants submitted various positions, which I will describe shortly.

The standard for granting a stay is: (1) whether granting the stay will simplify the issues for trial; (2) whether discovery is complete and a trial date is set; and (3) whether granting a stay would cause the non-moving party to suffer undue prejudice from any delay, or a clear tactical disadvantage. *See, e.g., Vehicle IP LLC v. Wal–Mart Stores, Inc.*, 2010 WL 4823393, *1 (D.Del. 2010).

When I consider these factors, the second one clearly favors a stay. The requests have been made at the beginning of the case. The Rule 16 conference scheduled in October 2013 was postponed on the Court's initiative, there is no trial date, and there has been no formal discovery.

To some extent the considerations relating to the first and third factors overlap. In regard to the first factor, Mellanox knows its technology better than the defendants. It is in the best position, and probably has the most motivation, to litigate issues of infringement and invalidity. As a practical matter, if it settles the case, in view of its indemnification obligations, it will have to resolve at least some of the customer cases. If the case is litigated to the end, it might resolve either infringement or invalidity issues decisively, or, if the decisions are in favor of Infinite Data, in such a way that as a practical matter there are fewer issues remaining. Thus, there is significant potential for simplification of the issues if the Mellanox litigation goes first.

In regard to the third factor, there is almost always prejudice in delay, and this case is no different. Infinite Data is not a competitor, so it can be recompensed by monetary damages. Thus, any prejudice is not particularly great, as a monetary judgment at a later time should still adequately compensate Infinite Data for its injury. I also consider tactical disadvantages. I would have to be willfully blind not to understand that it is a significant tactical advantage for

Plaintiff to be herding twenty-one defendant cats, and that it would significantly alter the tactical landscape if the defendants are able to sit on the sidelines and let their champion, Mellanox, do battle.

In short, a stay is a reasonable thing to consider.

The theoretical reason for staying "customer cases" is that the manufacturer is in a better position, and has a greater interest, in defending its product. The concept is a little more complicated here, because Mellanox does not sell a product that the customers resell. Rather the claim is that the customers use the product, and perhaps modify it in doing so, and then make profits from its use in their diverse business operations. The extent to which litigation with Mellanox will result in patent exhaustion is not an entirely clear issue.

Thus, it makes sense to me to proceed with the Mellanox case and stay the others, since I think resolution of the Mellanox case will most likely significantly advance the ball towards resolution of, at least, many of the cases. I am, however, concerned about fairness to Infinite Data, which, after all, did not sue Mellanox. Thus, it seems to me that if I am going to force Infinite Data to forego chasing its preferred targets, Infinite Data ought to get something concrete out of it, which would also offer a better chance of locking in the simplification that could result from Mellanox going first. In that regard, I think the defendants ought to get one shot at invalidity, and, if they are willing to have Mellanox take that shot, then I believe that the balance tips in favor of granting a stay. For the defendants who want to be able to litigate (or relitigate) invalidity, it seems best to have them do so on the same schedule as Mellanox, and, for them, I will deny a stay.

Based on my readings of the submission by eighteen defendants (D.I. 30 in No. 12-1616), I will grant the stay motions (No. 12-1616, D.I. 19; No. 12-1617, D.I. 15; No. 12-1618, D.I. 23;

No. 12-1622, D.I. 20; No. 12-1623, D.I. 18; No. 12-1638, D.I. 13; No. 13-251, D.I. 8; No. 13-252, D.I. 8; No. 13-253, D.I. 10; 13-254, D.I. 13; No. 13-255, D.I. 8; No. 13-256, D.I. 16; No. 13-257, D.I. 13; No. 13-258, D.I. 10; No. 13-261, D.I. 8; No. 13-264, D.I. ; No. 13-266, D.I. 8; No. 13-267, D.I. 8) for the defendants who have agreed to be bound by any final decision on invalidity in the Mellanox case.[2] For Home Depot, which has not agreed to be bound by any final invalidity decision (No. 13-260, D.I. 20 at 2), and, which may not even use the Mellanox technology, the motion to stay (No. 13-260, D.I. 16) will be denied. For General Motors, which does not argue that it does not use Mellanox technology, but also has not agreed to be bound by any final invalidity decision (No. 13-259, D.I. 18 at 2), the motion to stay (No. 13-259, D.I. 10) will be denied. Mastercard takes a position that is very close to that of the "eighteen defendants." (No. 13-262, D.I. 16). Mastercard agrees to be bound by a final invalidity decision "to the extent it involves a Mellanox product, product feature, or product component at issue in the Mellanox declaratory judgment action." (No. 13-262, D.I. 16 at 3). This contrasts with the position of the "eighteen defendants" – "To the extent Infinite Data asserts new infringement allegations in its suit against a Customer or a subsequent suit against the same party or parties, Customer may seek leave from the Court to raise issues of validity or unenforceability

---

[2] Infinite Data opposes any stay. Infinite Data has raised various points in regard to the proposed stays should I be inclined to grant them. (No. 12-1616, D.I. 31). First, Infinite Data objects to the defendants' stipulation that it cannot raise any infringement claim against the customers that could have been raised in the Mellanox lawsuit. I agree with Infinite Data that this is more than is necessary at this stage, and therefore I am not going to so bind Infinite Data. I think Mellanox, by virtue of its declaratory judgment, has the power to raise whatever infringement issues it wants to raise, and by virtue of its position relative to its customers and as the maker of the technology at issue, has the incentive to do so. In view of the invalidity stipulation, if new infringement allegations are raised later, there may also be new invalidity allegations. I expect there will be incentives for both Infinite Data and Mellanox to resolve as much as possible in their action. Second, Infinite Data believes a final invalidity decision should be final. Defendants noted that Infinite Data might argue for broader claim construction in subsequent lawsuits. It does not strike me as impossible that Infinite Data might do so. Thus, I think the extent to which the defendants are bound by the invalidity determination should, like infringement, be related to what is actually determined in the context of the Mellanox action.

of Infinite Data's new infringement allegations." ((No. 12-1616, D.I. 30 at 7). If I am reading these two stipulations correctly, the major difference is that the "eighteen defendants" would leave the issue of what to do if Infinite Data accuses non-Mellanox technology (or Mellanox technology not at issue in the declaratory judgment action) to my discretion, and Mastercard would prefer not to do so. Since I expect I would exercise my discretion to grant such leave, were it to come to pass, and since the "eighteen defendants" sought to have the benefit of any "narrower agreement to be bound," I will grant Mastercard's motion for a stay (No. 13-262, D.I. 8), and treat the "eighteen defendants" as having stipulated to what Mastercard stipulated to, in regard to invalidity.[3]

January 23, 2014
Date

Richard G. Andrews
United States District Judge

---

[3] If any of the "eighteen defendants" prefers to adhere to the original stipulation, the party should file something in writing within two weeks stating that decision.